■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELISSA A. OSTAS, Appellant.—Yesawich Jr., J.

These charges arose from the brutal murder of a 64-year-old woman, a neighbor of defendant's grandmother, on September 17, 1989. That night, defendant and her boyfriend, codefendant Daniel Rudicel, went to the victim's home in the Village of Owego, Tioga County. After introducing themselves, defendant and Rudicel asked to borrow a pan of hot water and, when the victim turned toward the sink, Rudicel began to strike her about the head with a hammer he had concealed in his jacket. Although defendant left the room when Rudicel pulled out the hammer, she returned to throw him a shirt so that he could smother the victim and, when that failed, gave him her knife.

An autopsy revealed the victim suffered five separate stab wounds to the neck, blunt instrument injuries to the head, a

fracture to her hand and lacerations to her fingers, nose and face; her death resulted from a penetrating wound which severed her carotid artery. When Rudicel joined defendant in the living room moments later, defendant removed the victim's purse and car keys from her bedroom and then the two fled in the victim's car; they were apprehended several days later while in a second stolen vehicle in Indiana by a Marion, Indiana, police officer and taken to the police station where defendant made an inculpatory oral statement. Shortly after her return to New York and while in jail following her arraignment, defendant wrote a five-page statement describing the incident at the victim's home. Both statements were admitted into evidence at trial.

The jury found defendant guilty of all counts charged in the indictment. Defendant was sentenced to concurrent indeterminate terms of imprisonment of 23½ years to life for murder in the second degree (intentional murder), 23½ years to life for murder in the second degree (felony murder), 3 to 9 years for robbery in the first degree and 3 to 9 years for burglary in the first degree. On appeal defendant maintains that County Court erred in refusing to suppress her oral statement made in Indiana and the written statement made in Tioga County, and, further, that she was denied effective assistance of counsel. We affirm the conviction.

County Court properly admitted defendant's tape-recorded statement made to Indiana authorities after defendant had been advised of her *Miranda* rights. The *Miranda* rule is perceived as a procedural safeguard and procedural matters are traditionally governed by the law of the forum *(see, People v Benson,* 88 AD2d 229, 231). Although defendant's oral statement was taken in Indiana by Indiana police officers, it was to be used in a New York criminal proceeding generated by a violent crime committed in New York; hence, New York has a paramount interest in applying its laws *(see, supra).* Consequently, defendant, who was 16 years old at the time of the incident, is not entitled to the protections afforded her by Indiana law[1] and is too old to benefit from the safeguards

---

1. Under Indiana law, any right guaranteed to a child, defined as a person under 18 years of age, under the United States and/or Indiana Constitution or any other law may be waived only (1) by counsel, if the child knowingly and voluntarily joins in the waiver, (2) by the child's custodial parent, guardian, custodian or guardian ad litem if, *inter alia,* the child joins in the waiver, or (3) by the child in the presence of one of the aforementioned individuals (Ind Code Annot § 31-6-7-3 [a], [b] [1990]). The court must consider several statutory factors in determining whether a

provided by New York's Family Court Act § 305.2.[2] Concededly, the officers did not contact defendant's parents prior to questioning her; there is, however, no evidence that they isolated her from her family, counsel or other supportive adults in order to secure her confession (cf., *People v Bevilacqua,* 45 NY2d 508, 514; *People v Townsend,* 33 NY2d 37). Moreover, according to undisputed police testimony, defendant did not ask to speak with her parents or an attorney prior to or while making her oral statement. And, aside from her age, there is no indication that defendant's waiver was other than an intelligent one (see, *Johnson v Zerbst,* 304 US 458, 464; cf., *Gallegos v Colorado,* 370 US 49). Hence, County Court appropriately applied New York law and allowed defendant's oral statement to be admitted at trial.

Nor are we persuaded that County Court erred in refusing to suppress a written statement made by defendant on September 25, 1989 while she was in the Tioga County Jail. According to her attorney, that statement, which clearly implicates her in the homicide, was written by her in an "[attempt] to piece together the events leading to her being placed [there]". When the right to counsel has been invoked, the police may not thereafter interrogate a defendant in the absence of defendant's counsel. This rule does not apply, however, to "a spontaneous or unsolicited statement to the police which is in no way the product of an interrogation environment or the result of express questioning or its functional equivalent" (*People v Kern,* 149 AD2d 187, 220, *affd* 75 NY2d 638, *cert denied* — US —, 111 S Ct 77).

Here, a guard at the jail testified that she read defendant's handwritten statement after defendant asked her to do so. Thereafter, in the presence of defendant's mother, the guard gave defendant a copy of the statement, asked defendant to write a note stating that she had given the guard the completed statement of her own free will, and informed defendant that she would put the original and the note in defendant's file; neither defendant nor her mother objected. In fact, the guard testified that she acted in response to defendant's request that she keep the document for her. The tone and the

---

knowing and voluntary waiver was made (see, Ind Code Annot § 31-6-7-3 [d] [1990]).

2. Under Family Court Act § 305.2, a parent, legal guardian or, if they are unavailable, the person with whom the child resides must be notified immediately when a child *under* age 16 is taken into custody and the child cannot be questioned unless both the child and the adult so notified have been advised of the child's *Miranda* rights (Family Ct Act § 305.2 [3], [7]).

language of the statement itself support the guard's testimony that the statement was voluntary, spontaneous and unsolicited, and the mere fact that defendant made the statement while in jail does not signal a violation of defendant's right to counsel (see, People v Walls, 130 AD2d 694, lv denied 70 NY2d 718).

Defendant's pro se claim of ineffective assistance of counsel is unpersuasive. Although his strategy (to convince the jury that defendant acted, not with an intent to kill, but in reaction to the duress and extreme emotional distress of her relationship with Rudicel) proved unsuccessful (see, People v Gagnon, 150 AD2d 918, 919, affd 75 NY2d 736), a review of the record before us, as a whole, indicates that defendant received meaningful representation (see, People v Baldi, 54 NY2d 137, 147).

Regarding defendant's contention that defense counsel failed to challenge the impaneling of three jurors, one of whom had been represented by the District Attorney some four years earlier in a civil matter, we note that two of these jurors expressly assured County Court that they could be fair and impartial and nothing in the record suggests that they were otherwise. And, although the third juror apparently could not assure the court that a newspaper article she had read about the trial on the morning she was picked as a juror "wouldn't play any role whatsoever", she did say that she did not believe that what she had read would "be in the back of her mind" (see, People v Butts, 140 AD2d 739, 740-741). The failure of defense counsel to peremptorily challenge her cannot, without more, be said to have denied defendant a fair trial. There is no showing that there was a substantial risk that this juror would not properly discharge her responsibilities.

That defense counsel did not object to admission of a rather grisly postmortem photograph of the victim or to County Court's charge is also not grounds for reversal. In light of defendant's oral and written statements, the photograph cannot be said to be unduly prejudicial (see, People v Pobliner, 32 NY2d 356, 369-370, cert denied 416 US 905), and as for the charge, it was fully adequate.

We have examined defendant's other arguments and find them lacking in merit.

Mikoll, Levine, Crew III and Casey, JJ., concur. Ordered that the judgment is affirmed.